IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2020

## IN RE SALLIE ANN HOFMANN[1]

**Appeal from the Chancery Court for Johnson County**
**No. 7294     John C. Rambo, Chancellor**

_____

### No. E2019-01856-COA-R3-CV

_____

This appeal concerns an action to establish undue influence and violations of the Tennessee Adult Protection Act, codified at Tennessee Code Annotated section 71-6-120, et seq.[2]  The trial court denied the claims submitted by Plaintiff.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S. and W. NEAL MCBRAYER, J., joined.

Debra Christiance, Oneonta, New York, Pro Se.

Steven C. Huret and Robert L. Arrington, Kingsport, Tennessee, for the appellees, Tawnya Murwin, individually and as a successor trustee of the Sallie Ann Hofmann Trust, and Craig Murwin.

_____

[1] Mrs. Hofmann's last name is misspelled throughout the record as Hoffman.  The correct spelling of her name is Hofmann.

[2] "[A]n elderly person or disabled adult in that person's own right, or by conservator or next friend, shall have a right of recovery in a civil action for compensatory damages for abuse or neglect, sexual abuse or exploitation as defined in this part or for theft of such person's or adult's money or property whether by fraud, deceit, coercion or otherwise."

## OPINION

## I.     BACKGROUND

In the years prior to her death, Sallie Ann Hofmann ("Decedent") experienced a decline in health as a result of two bouts of cancer.  Her daughter and son-in-law, Tawnya and Craig Murwin (collectively "Defendants"), provided care for her during that time and lived near her in New York.  Mrs. Murwin was appointed as Decedent's durable power of attorney in February 2009.  At that same time, Decedent established a living trust in her name, the Sallie Ann Hofmann Trust, naming Mrs. Murwin as the successor trustee.

Defendants later moved with Decedent to Johnson City, Tennessee in May 2016, where Defendants purchased a home with Decedent.  The home was purchased with a liquidity access line loan from Decedent's trust with the understanding that Defendants were responsible for 50 percent of the purchase, totaling $196,713.52.  Defendants lived in the upstairs portion of the home, while Decedent lived in the downstairs portion. Decedent died on November 4, 2016.

Following Decedent's passing, Defendants procured a loan to repay their portion of the purchase price for the home to the trust on March 21, 2017.  Debra Christiance ("Plaintiff") and Thomas Lord[3] then filed this action on June 16, 2017, against Defendants for undue influence and conversion and violations of the Tennessee Adult Protection Act ("the TAPA").  Plaintiff, along with Mrs. Murwin and other unnamed persons, are Decedent's issue and beneficiaries to the trust.  Plaintiff and Mr. Lord alleged[4] as follows:

> Count 1:  UNDUE INFLUENCE AND CONVERSION
> 1.      Upon information and belief, [Mrs. Murwin] was appointed as attorney-in-fact for [Decedent] by virtue of a power of attorney sometime in 2009.
>
> 2.      [Decedent] subsequently began to decline in health.  Consequently, so did her mental condition.  As [Decedent] deteriorated, [Defendants] began to isolate [Decedent] from direct contact with other family members and systematically take advantage of [Decedent].  [Defendants] moved [Decedent] to Tennessee where no other family members are present.

---

[3] Mr. Lord is not a party to this appeal.

[4] Plaintiff and Mr. Lord filed their initial complaint on June 16, 2017, and an amended complaint on June 21, 2019.

- 2 -

While in Tennessee, contact was controlled by [Defendants] and access to [Decedent], although some visits were granted, was severely diminished.

3. [Defendants] began to have access and control over [Decedent's] assets and accounts[.]

4. [Defendants] used [Decedent's] funds to purchase a home for themselves [in Tennessee].

5. Upon information and belief, [Defendants] also used other funds of [Decedent] for their own benefit and use.

6. [Plaintiff and Mr. Lord] are remainder beneficiaries of the Sallie Ann Hofmann Trust to which all of [Decedent's] funds were ultimately distributed[,] and [Plaintiff and Mr. Lord], as remainder beneficiaries, would have standing to assert any claims under the aforementioned causes of action.

### COUNT II: ADULT PROTECTION ACT VIOLATION

7. Pursuant to [Tennessee Code Annotated section] 71-6-102, [Decedent] was an elderly disabled adult who lacked the capacity to consent including the ability to perceive, appreciate all relevant facts and to reach a rational judgment upon such facts, or to make and carry out reasonable decisions concerning [herself or her] resources nor to protect herself from neglect or hazardous or abusive situations without assistance.

8. [Defendants] were statutorily defined caretakers.

9. [Defendants] neglected [Decedent] and/or deprived her of services by a caretaker that were necessary to maintain her health and welfare. Their negligence inflicted pain and injury upon [Decedent].

10. [Defendants'] acts were intentional and solely for their own benefit.

Defendants denied wrongdoing, claiming that Mrs. Murwin rarely exercised the powers conferred upon her as Decedent's power of attorney. They asserted that they purchased the home with Decedent through an arms-length, good faith agreement, whereby Decedent agreed to fund 50 percent of the total acquisition cost. They further denied any allegations that they abused or mistreated Decedent.

The case proceeded to a hearing,[5] after which the court ruled in favor of Defendants. In its memorandum opinion, incorporated in the final order, the court explained its ruling, in pertinent part, as follows:

> Let me start first with [the TAPA]. [Decedent] was a strong-willed individual who later in life suffered from two bouts of cancer, the second of which caused her death. . . . There was no evidence to indicate that [Decedent] was anything but healthy, strong-willed, and independent prior to her cancer diagnosis in November of 2009. There was no influence by [Mrs. Murwin] to influence the execution of [Decedent's] Last Will and Testament, Power of Attorney, and Trust, all of which she made arrangements for and executed on February 12, 2009, and appeared that it's undisputed, or at least in this Court's mind, it is perfectly clear she was operating independently and making her own decisions in February 2009 and was living independently. . . . During the months of May through November 2016 [Decedent] received appropriate medical care. She was checked upon [by authorities as a result of complaints made by Plaintiff] to the Johnson County Sheriff's Department and Adult Protection Services. Third parties who came to check on her welfare were there at least three times; two from Adult Protective Services and one time from the Johnson County Sheriff's Department. There was nothing to be found that was amiss. During those months [Decedent] was not isolated from family by [Defendants] in any way. [Decedent] could respond to calls if she wanted to, and she could initiate calls if she wanted to. She had her own phone. She had appropriate living arrangements.

Next, as to the count of undue influence and conversion, the court held, in pertinent part, as follows:

> The evidence was not persuasive that a Power of Attorney was used by [Defendants] to purchase the home. . . . Arrangements regarding financing [were] handled with the agreement of [Decedent]. She knew about the purchase of the home. She knew the home was going to be purchased before she left the State of New York. Even if there was a per se confidential relationship, and the law requires not just the execution of the Power of Attorney, but the use of it. . . . [Decedent] elected to come to Tennessee for two reasons. She preferred care from [Mrs. Murwin] over other relatives, [and] she didn't like the weather particularly in New York[.] She was more connected to what became her Tennessee family than she

---

[5] No transcript or statement of the evidence was provided for this court's review.

was connected to land and family in the State of New York. The basement area, the photographs confirm, was nice and suitable for [Decedent], and it was her election to stay there. She knew about the home, helped select the home. They looked at many houses together. The home was selected because it was handicap accessible. And this is not a case where [Decedent] was left in the basement by herself. . . . She was not set in the basement and left alone to her own devices. She just was not an isolated person in any way. She was an honored person. To the extent [Mrs. Murwin] assisted [Decedent] with finances, it was consistent with what [Decedent] wanted and the arrangements, which were fair, made between them. The evidence was not persuasive in any way that [Decedent] was taken advantage of in paying for half of the house in Tennessee.

In consideration of the foregoing, the court dismissed the action against Defendants as follows:

Count I for Undue Influence and Conversion in the First Amended Complaint for Damages is dismissed with prejudice.

Count II for Adult Protection Act Violation in the First Amended Complaint for Damages is dismissed with prejudice.

This appeal followed the denial of post-trial motions.


## II.     ISSUES

Plaintiff, appearing pro se, did not submit a statement of issues for this court's review. Instead, she submitted her summary of various hearings before the court and her complaints concerning her counsel's performance during said hearings. She then offered the following in her conclusion:

Wherefore, [Plaintiff] respectfully [requests] this Honorable Court find that [counsel] did not affectively represent me . . . and at this I would ask the court to turn over the lower court decision. By way of hearing testimony at the oral argument proceedings of this court of appeal, and reward me full reward of what was requested in lower court, or at the very least find in my favor and have new hearing.

Defendants offered the following statement of the issues in response:

(1)     Whether the trial court erred by finding that [Defendants] neither unduly influenced [Decedent], who was trustee of her own living trust during her lifetime, nor converted any assets of the living trust.

(2)     Whether the trial court erred by finding that [Defendants] did not violate any provisions of the Tennessee Adult Protection Act.

(3)     Whether the trial court abused its discretion when it denied Plaintiff's motion to amend judgment and add additional findings of fact.

We restate the issues on appeal from our reading of the appellate briefs as follows:

(A)     Whether dismissal of the appeal is warranted by the untimely filing of the brief and deficiencies in the brief itself.

(B)     Whether reversal of the trial court's decision is warranted.

### III.     ANALYSIS

#### A.

Defendants first request dismissal of the appeal based upon the untimely filing of the brief. The record in this appeal was filed with the appellate court clerk on February 28, 2020, thereby establishing a filing deadline of March 30, 2020, for the appellate brief in accordance with Rule 29(a) of the Tennessee Rules of Appellate Procedure.[6] Plaintiff, appearing pro se, filed her brief on May 6, 2020.

During the pendency of this appeal, our Tennessee Supreme Court issued a number of orders providing guidance for the court system concerning the continuity of operations plan amidst the COVID-19 pandemic. One such order, entered on March 25, 2020, provided, in part, as follows:

> Deadlines set forth in court rules, statutes, ordinances, administrative rules, or otherwise that are set to expire during the period from Friday, March 13, 2020, through Tuesday, May 5, 2020, are hereby extended through Wednesday, May 6, 2020.

---

[6] "The appellant shall serve and file a brief within 30 days after the date on which the record is filed with the clerk."

Another order, entered on March 31, 2020, provided the following clarification concerning appellate court deadlines:

- The extension through May 6, 2020 does not apply to any deadlines set by Tennessee Rules of Appellate Procedure except as set forth in this order.

- Any party having an appellate deadline that commenced, was running, or expired from March 13 through March 31, 2020, shall have until April 30, 2020, to complete the action required, subject to the exceptions stated below.

- This extension expressly includes, but is not limited to, the deadlines applicable to civil and criminal notices of appeal and applications for permission to appeal. This extension shall not serve to shorten any time period currently provided under the Rules of Appellate Procedure.

- Appellate courts may grant extensions of any deadlines set forth in the Tennessee Rules of Appellate Procedure, including those deadlines not subject to extension under Rule 2 of the Tennessee 03/31/2020 Rules of Appellate Procedure, while the state of emergency for the Judicial Branch remains in place.

Defendants assert that the March 31 order clearly established a filing deadline of April 30, 2020. We agree; however, we decline to dismiss this appeal based upon the untimely filing of the brief.

Defendants next assert that the brief was woefully deficient and violative of the Tennessee Rules of Appellate Procedure. Defendants request waiver of the issues presented as a result of the state of the brief. We agree that there are a multitude of problems with the brief and that Plaintiff failed to comply with the minimum requirements. However, we will briefly address her arguments as pertinent to this appeal in the event of further appellate review.

B.

Plaintiff does not suggest that the court erred in dismissing the action because the evidence submitted was sufficient to establish her claims. Instead, she asks this court to

reverse the trial court's decision based upon her counsel's failure to adequately represent her and prosecute her claims. She submits a number of documents that were not considered by the trial court to establish the ineffectiveness of her counsel.

The jurisdiction of this court is "appellate only." Tenn. Code Ann. § 16-4-108. Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). We simply cannot consider Plaintiff's claim of ineffective assistance of counsel as an original action on appeal.

In an abundance of caution and to further facilitate appellate review, we likewise hold that the failure to submit a transcript or statement of the evidence for this court's review is fatal to this appeal. "When no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citing *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979)). Accordingly, we affirm the court's dismissal of the action and denial of post-trial motions.

## IV. CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Debra Christiance.

_____
JOHN W. McCLARTY, JUDGE